UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| RAY LINK, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:07-CV-339 |
| v. | ) | |
| | ) | |
| TOBY H. RHYMER, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

### I. INTRODUCTION

There is no real dispute that Ray Link, a pretrial detainee, started a fracas in a crowded holding cell of the Allen County Jail when he punched a confinement officer and then tried to evade at least five more officers sent to subdue him. Link claims the various officers (Defendants Hamilton, Rhymer, Tindall, Meckley, Gonzalez, and Giradot) used excessive force in the process and is suing them under the Fourth and Fourteenth Amendments of the United States Constitution.

In particular, Link maintains he suffered a broken jaw in the melee, but the claim is complicated by the fact that Link asserts his arrest the day before by officers of the Fort Wayne Police Department also resulted in a broken jaw.[1] Moreover, what seems exceedingly odd, is Link's assertion that he had no symptoms of a broken jaw from either incident, until weeks later. Nevertheless, it does seem clear that Link's jaw was broken at some point, although even Link seems at a loss to say when, how, or by whom.

---

[1] Summary judgment was granted in favor of the arresting officers and against Link in that first case. *See Link v. Taylor*, No. 1:07-cv-0338, Docket #71 (N.D. Ind. July 20, 2009).

1

This sets the stage for the Defendants' motion for summary judgment (Docket #64), which Link opposes but with little evidentiary support.[2] For the following reasons, the officers' motion for summary judgment will be GRANTED.

## II. FACTUAL AND PROCEDURAL BACKGROUND[3]

On September 16, 2007, Link was arrested by some Fort Wayne police officers. (Link Dep. (County) 10:7-25, Dec. 12, 2008.) Much later, Link would claim that he sustained a broken jaw during the arrest. (Link Dep. (County) 12:22-24; Link Dep. (City) 12:10-25, Feb. 25, 2009.) In any event, Link was immediately transported to the Allen County Jail, where he did not inform anyone of his alleged injury or request any medical treatment. (Link Dep. (City) 23:16-23.)

The next morning, Link and thirteen other inmates were taken to a holding cell to view an advisement of rights video before their first appearance in court. (Link Dep. (County) 20:6-12.) The holding cell was equipped with a video camera, as a DVD of the entire event has been submitted for the record. (Defs.' Mot. for Summ. J. Ex. L.)

As the DVD reveals, and as officer Hamilton would later testify, he began to show the arraignment video to the inmates, but Link interrupted with several comments about it. (Link Dep. (County) 20:20-25, 21:3-6; Hamilton Aff. ¶ 7.) Officer Hamilton directed Link to sit down several times so at least the other inmates could watch the video. (Link Dep. (County) 21:4-5.)

---

[2]On September 1, 2009, the Defendants also filed a Motion to Strike Link's responsive filings as untimely but that motion was denied. (Docket #73, 74.) Nevertheless, the Court granted Link until September 29, 2009, to file a response to the Defendants' Motion to the extent it argued the merits. (Docket #74.) Link has failed to do so. Nevertheless, because Link's case does not survive even if his materials are considered, the Court deems the Motion to Strike moot.

[3]The facts are viewed in a light most favorable to Link as the non-moving party. *Payne v. Pauley*, 337 F.3d 767, 770 (7th Cir. 2003).

When Link continued to interrupt, officer Hamilton repeatedly ordered Link to exit the cell. (Hamilton Aff. ¶ 10.)  Link refused to follow the orders, and told officer Hamilton that he did not have to sit down or exit. (Hamilton Aff. ¶¶ 10-12.)  Officer Hamilton entered the cell and Link spoke up with "[hey], man what's up?" (Link Dep. (County) 21:8-9.)  As Link admits, and as the DVD shows, officer Hamilton did not touch Link. (Link Dep. (County) 22:14.)  Officer Hamilton did, however, stand close enough to Link to stop any aggressive physical motion. (Hamilton Aff. ¶ 13.)  At this point, officer Hamilton was alone in the cell with a belligerent Link and thirteen other inmates. (Defs.' Mot. for Summ. J. Ex. L.)

As portrayed on the DVD, it was at this point that Link, a self-described sixth degree black belt with additional martial arts training, punched officer Hamilton in the left-side of the face with a closed fist. (Link Dep. (County) 23:3; Hamilton Aff. ¶ 15.)  Then, officer Hamilton grabbed Link's shirt in a defensive maneuver. (Link Dep. (County) 26:22-25, 27:1.)  Nonetheless, Link wiggled out of his shirt and continued attacking officer Hamilton by ripping off the officer's neck tie. (Link Dep. (County) 27:9; Hamilton Aff. ¶ 16; *see also* Defs.' Mot. for Summ. J. Ex. L.)  At this point, the DVD reveals that officers Rhymer, Tindall, Meckley, Gonzales, and Giradot entered the cell at various times to quell the disturbance and to prevent what was perceived as an attempted escape. (Hamilton Aff. ¶ 18; Defs.' Mot. for Summ. J. Ex. L.)  Indeed, Link admits he was trying to get away. (Link Dep. (County) 30:19-20; *see also* Defs.' Mot. for Summ. J. Ex. L.)

Link recalls officers "pulling me and tugging me" in order to bring him to the ground. (Link Dep. (County) 37:10.)  Link was first ordered to get on the floor as officers Meckley and Tindall each grabbed one of his legs. (Meckley Aff. ¶ 7; Tindall Aff. ¶ 9.)  Next, officer Giradot

3

placed Link in a headlock while officer Rhymer took control of one of Link's arms. (Giradot Aff. ¶ 7; Rhymer Aff. ¶ 8.)  At this stage in the video, there is no evidence of anything that would lead a reasonable jury to conclude that Link has sustained a broken jaw. (Defs.' Mot. for Summ. J. Ex. L.)  In a joint effort, the officers eventually took Link to the ground and positioned him flat on his stomach with his right cheek on the floor. (Link Dep. (County) 32:25, 33:1-6, 39:5-6.)  Link claims his forehead and nose hit the ground at some point, but he does not know which body part actually landed on the floor first. (Link Dep. (County) 32:25, 33:1-6, 34:1-3.)

Once on the ground, Link continued to swear at the officers but displayed no signs of any cuts, bruises, or blood on his face. (Link Dep. (County) 39:4-14.)  At this point, officer Gonzales placed his knee on Link's back and applied a pressure point behind Link's ear in order to facilitate handcuffing. (Rhymer Aff. ¶ 8; Gonzales Aff. ¶ 8.)  Officer Rhymer then handcuffed Link and, along with officer Giradot, escorted Link out of the holding cell. (Rhymer Aff. ¶ 8; Gonzalez Aff. ¶ 9.)

Link claims the confinement officers broke his jaw during this "attack", but is unsure when, how, or by whom he sustained the injury. (Link Dep. (City) 56:21-25, 57:1-7.)  In contrast, Link points to an event the day before and asserts that Fort Wayne City police officers broke his jaw during his arrest when they "bum rushed" him, and his jaw struck the pavement. (Link Dep. (City) 57:8-12, 50:5-9.)  Moreover, Link failed to report any pain or discomfort during his initial intake process or to the Allen County Jail nurse during a full health screening two days after his admission to the jail.[4]  (Defs.' Mot. for Summ. J. Ex. G.)

---

[4]Specifically, Link provided no report of pain in the Dental and Musculoskeletal section of the evaluation. (Defs.' Mot. Summ. J. Ex. G.)

Allegedly, Link remained unaware of his injury until about three weeks later, when on October 5, 2007, he awoke with a swollen jaw. (Link Dep. (City) 64:3-6.) That same day, Link completed a Medical Request Form stating he could not chew food and may have a broken jaw and back. (Defs.' Mot. for Summ. J. Ex. H.) At the time, Link did not know why his jaw was swollen, and in fact, did not learn his jaw was broken until he was taken to the hospital the following day. (Link Dep. (City) 64:6-8.) At the hospital, a CT Scan indicated new fractures on both the right and left side of Link's mandible, injuries that did not appear on a previous examination on June 15, 2007. (Defs.' Mot. for Summ. J. Ex. I.)

Eventually, Link pled guilty to a D felony aggravated battery charge for punching officer Hamilton. (Link Dep. (County) 6:1-11.)

### III. STANDARD OF REVIEW

Summary judgment may be granted only if there are no disputed genuine issues of material fact. *Payne*, 337 F.3d at 770. When ruling on a motion for summary judgment, a court "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts; these are jobs for a fact finder." *Id.* The only task in ruling on a motion for summary judgment is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Waldridge v. Am. Hoechst Corp*, 24 F.3d 918, 920 (7th Cir. 1994). If the evidence is such that a reasonable fact finder could return a verdict in favor of the nonmoving party, summary judgment may not be granted. *Payne*, 337 F.3d at 770.

A court must construe the record in the light most favorable to the nonmoving party and avoid "the temptation to decide which party's version of the facts is more likely true," as "summary judgment cannot be used to resolve swearing contests between litigants." *Id.*

5

However, "a party opposing summary judgment may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact for trial." *Id.* at 771. In that regard, "the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the 'Statement of Genuine Issues' filed in opposition to the motion, as supported by the depositions, discovery responses, affidavits and other admissible evidence on file." N.D. Ind. L.R. 56.1(b); *see also Bradley v. Work*, 154 F.3d 704, 707-08 (7th Cir. 1998); *Waldridge*, 24 F.3d at 922 (collecting cases in which the Seventh Circuit Court of Appeals has "upheld the strict enforcement of [Local Rule 56.1]").

## IV. DISCUSSION

In this action brought under 42 U.S.C. § 1983, Link must show that the Defendants violated one or more of his constitutionally protected rights while they were acting under the color of state law. *Lewis v. Downey*, 581 F.3d 467, 472-73 (7th Cir. 2009). Excessive force against pretrial detainees violates rights protected by the Fourteenth Amendment; however, the Eighth Amendment standard applies when such claims arise from a jail disturbance. *Hollgarth v. Dawson*, No. 05-2125, 2007 WL 2812151, at *11 (C.D. Ill. Sept. 19, 2007) (citing *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989); *Wilson v. Williams*, 83 F.3d 870, 876-77 (7th Cir. 1996)).

The Eighth Amendment protects inmates from "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986). Correspondingly, the use of *de minimus* force is not a violation of the Eighth Amendment where the conduct "is not of a sort repugnant to the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). If the conduct

6

exceeds *de minimus* force, however, courts then proceed to analyze whether it was "applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id*. at 7. Under such an analysis, a plaintiff must show actual intent or deliberate indifference rather than mere negligence or gross negligence. *Harper v. Albert*, 400 F.3d 1052, 1065 (7th Cir. 2005) (quoting *James v. Milwaukee Co.*, 956 F.2d 696, 699 (7th Cir. 1992)). Courts evaluate the nature of the conduct and subjective intent of the officers by considering five factors: the need for force, the amount of force used, the threat reasonably perceived by officers, the efforts to temper use of force, and the extent of injury caused by the force.[5] *Lewis*, 581 F.3d at 477 (citing *Filmore v. Page*, 358 F.3d 496, 504 (7th Cir. 2004); *Hollgarth*, 2007 WL 2812151, at *12 (citing *Wilson*, 83 F.3d at 875)).

At the outset, it must be remembered that "pain, and not injury, is the barometer" to measure the confinement officers' application of force. *Lewis*, 581 F.3d at 475 (citing *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)) (internal quote marks omitted). On that scale, Link's claim necessarily fails given that he registered no pain (or at least made no complaint of any) either at the time or for weeks afterward. Indeed, just days after the incident, Link was asked by medical personnel about any jaw or dental pain and claimed to have no problems. Of course, this is also consistent with the fact that immediately following the incident, Link had no visible signs of injury. Finally, the video reflects that the officers used only *de minimus* force (i.e. no punching, kicking, or striking) in their efforts to subdue Link. All this evidence, none of which Link disputes or rebuts, leads to the conclusion that the Defendants used only *de minimus* force as a matter of law, and thus no Eighth Amendment violation occurred. *Id.*; *Hollgarth*, 2007 WL

---

[5]The same factors also apply to excessive force claims brought under the Fourteenth Amendment. *Lewis*, 581 F.3d at 477.

2812151, at *12. Nevertheless, to complete the record, the Court will go on to consider the state of mind of the Defendants in connection with Link's claim.

Under the Eighth Amendment, the Court must consider the officers' subjective state of mind to determine whether a reasonable jury could infer that the force applied was done "with the intent to punish." *Hill v. Shelander*, 992 F.2d 714, 717-18 (7th Cir. 1993). In conducting the analysis, a review of the five factors catalogued in *Lewis*, 581 F.3d at 477, becomes necessary to gauge whether the force was done in good faith, to restore discipline, or whether it was done maliciously and sadistically to cause harm. *Hudson*, 503 U.S. at 7.

The first factor, the need for force, is manifest in this case. Officer Hamilton found himself alone with a belligerent Link and thirteen other inmates, an inherently dangerous situation, when Link attacked him. *See Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Clearly, this confrontational behavior posed an imminent risk and required some application of immediate force. *Lewis*, 581 F. 3d at 477 (listing cases validating use of taser guns on inmates physically threatening the safety of officers and others).

In addition, given the dangerous environment and the intensity of Link's resistance, the officers employed an appropriate amount of force. Officer Hamilton's verbal directions were met by Link's physical assault. As the altercation persisted, and with officer Hamilton clearly having difficulty with the wildly out of control Link, the amount of force increased with five additional officers entering the cell at intervals in an effort to quell the dangerous disturbance. The DVD shows, and Link himself admits, that no officer kicked or punched him at any time. Instead, the first two officers to arrive initially ordered Link to the ground and grabbed his limbs. Despite these efforts, Link refused to comply and continued thrashing about. Eventually, three

8

other officers joined the effort and overpowered Link by taking him to the ground with conventional methods of restraint. Altogether, the record reveals an appropriate amount of force to quell Link's disturbance and to restore order.

Indeed, Link's actions lead to the inescapable conclusion that the officers reasonably believed him to be a danger that called for a quick measured response. In short, Link's behavior could have easily and quickly led to further injuries, more violence, and possibly even a riot or escape by other inmates.

The Defendants' conduct also reveals that they attempted to temper their use of force. The number of officers physically engaged in the altercation increased only as the risk escalated, and immediately ceased once they regained control of the cell. Stated simply, once officers secured Link on the ground, the DVD shows that they backed away, except those officers responsible for handcuffing and escorting him to another cell. Thus, the record shows that the officers tempered their use of force in a reasonable manner.

Finally, as discussed previously, although Link's injuries are documented by objective medical evidence, they are complicated by a prior claim involving the same injury with different defendants, an extremely tenuous connection to the officers' force, and a total absence of pain or complaint following the incident. Furthermore, even if the Court could somehow infer that this incident caused Link's injury, objectively serious injuries only violate the Eighth Amendment if the officers acted with actual intent to harm or deliberate indifference. *Harper*, 400 F.3d at 1065. As shown above, there is no evidence to support such a claim. Therefore, given the above analysis, no reasonable jury could conclude that the officers' use of force was applied in any manner other than a good-faith effort to restore order, particularly since there is no evidence of

9

actual malice or any sadistic purpose to cause harm. Accordingly, Link's claim fails as a matter of law and summary judgment should be granted to the Defendants.

## V. CONCLUSION

For the above reasons, Defendants' Motion to Strike (Docket #73) is deemed moot, and their Motion for Summary Judgment (Docket #64) is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants and against the Plaintiff.

SO ORDERED.

Enter for this 6th day of November, 2009.

/S/ Roger B. Cosbey
Roger B. Cosbey,
United States Magistrate Judge